IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Honorable Marcia S. Krieger

Civil Action No. 07-cv-02301-MSK

IN RE: JESUS ARMANDO PEREZ

        Debtor.

CHARLES F. MCVAY,
United States Trustee Region 19, Plaintiff,

        Appellee,
v.

JESUS ARMANDO PEREZ, Defendant,

        Appellant.

---

## OPINION AND ORDER ON APPEAL

---

THIS MATTER is before the Court on appeal from an Order of the United States

Bankruptcy Court for the District of Colorado (the "Bankruptcy Court"): (i) declining to approve

a Stipulation to Dismiss an Adversary Proceeding brought by the United States Trustee for

denial of discharge pursuant to 11 U.S.C. §727(a)(3) and (4); and (ii) declining to enter an Order

of Discharge.  In determining this matter, the Court has considered the designated record and the

written and oral arguments of the parties, including Appellant's Opening Brief (**# 21**),

Appellant's Supplemental Brief (**# 30**), and the Submission of the United States Trustee as

Amicus Curiae (**# 31**).

Exercising jurisdiction pursuant to 28 U.S.C. § 158, the Court **REVERSES** the decision

of the Bankruptcy Court and **REMANDS** this matter for further action in accordance with this

1

opinion.

## I.      Material Facts

Appellant Jesus Armando Perez (hereafter, "the Debtor") entered the United States

without the authorization of the United States government in or around 1996.[1]  Sometime

thereafter, he used an unauthorized social security number ending in 3099 (the "3099 Number"

to obtain credit.[2]  After the Debtor married a United States citizen, he was properly issued a

social security number ending in 8844 (the "8844 Number").

On August 25, 2005, the Debtor filed a voluntary petition for Chapter 7 bankruptcy

relief. All of the debts listed in his schedules were acquired using the 3099 Number.[3]  On the

Petition in the box entitled "last four digits of Soc. Sec. No./Complete EIN other Tax I.D.," the

Debtor listed 3099/00-0008844.  On his Statement of Social Security Number,[4] he listed both

Social Security Numbers.[5]  The §341 Notice[6] submitted by the Debtor also listed two social

security numbers: xxx-xx-3099 and xxx-xx-8844, but according to the Debtor's counsel, the

---

[1]The Debtor states that on October 28, 2005, he obtained permanent resident status.  This Court is not aware of his current status, but notes that on May 31, 2007, the Debtor's attorney announced that the Debtor would become a citizen in November of that year.

[2]Apparently, the Social Security Administration had issued the 3099 Number to a male individual born in 1988.  At the time of the matters at issue here, such person would have been approximately 19 years old.  Despite request by the United States Trustee, the Social Security Administration would not disclose the identity of the person to whom it had issued the 3099 Number.

[3]These include a debt secured by a deed of trust on real property, credit card debt, and two car loans, totaling approximately $380,000.

[4]Fed. R. Bankr. P. 1007(f).

[5]The 3099 Number is typed on the Form 21 and the 8844 Number is handwritten.

[6]Official Form 9.

electronic form filing program caused the 8844 Number to appear as a corporate employer identification number, rather than an individual's Social Security Number.  Thus, the §341 Notice sent to creditors showed the following: xxx-xx-3099 and 00-0008844.

At the §341 Meeting, the Chapter 7 Trustee examined the Debtor.  The Debtor testified that a friend made up the 3099 Number for him, but that later he was properly issued the 8844 Number by the Social Security Administration.  The Debtor stated that all of his debts had been incurred using the 3099 Number, that he had made attempts to substitute the 8844 Number when he obtained it, but that his creditors, including a mortgage lender, instructed him to use the 3099 Number.

Within a month following the §341 Meeting, the Bankruptcy Court convened a hearing, s*ua sponte,* for the stated purpose of clarifying the Debtor's social security numbers and confirming that the creditors had received proper notice.  The Debtor appeared with counsel, and submitted a Declaration of Electronic Filing disclosing the two social security numbers, a copy of the Notice to Creditors of §341 Meeting, the Debtor's credit report showing the 3099 Number, a copy of his 2004 Federal Tax Return showing the 8844 Number, and a copy of his Social Security Card showing the 8844 Number.  In response to a question as to whether the 3099 Number had been issued to him by an agency of the U.S. Government, the Debtor first answered "no, it wasn't."  The question then was repeated and the Debtor declined to respond, invoking his 5th Amendment rights.  The Debtor was asked nothing further.  The Debtor's counsel argued that the Debtor had fully disclosed the two social security numbers, and to the extent that there

was any deficiency in notice to creditors, offered to have the §341 notice reissued[7] with both social security numbers clearly identified as such.

The Bankruptcy Court determined that the §341 notice had only disclosed only the 3099 Number in full, but did not order that a new or supplemental notice be given.  Instead, it focused upon the Debtor's invocation of his rights under the 5th Amendment.[8]  Citing its authority under 11 U.S.C. §105(a), the Bankruptcy Court ordered that no discharge would enter until "the issue ha[d] been clarified," directed the Debtor to notify the credit reporting agencies and others of the 8844 Number, and "reserve[d] the option to continue this hearing and/or dismiss this case based on the new information at hand."   The Bankruptcy Court also announced that it would refer the matter to the U.S. Attorney's Office, and directed the United States Trustee to "fulfill its

---

[7] Official Forms, such as Form 9 ( Notice of §341 Meeting), can be modified pursuant to Fed. R. Bankr. P. 9009.

[8]The Bankruptcy Court stated:

> Taking the 5th Amendment is a right in a court of law.  But taking the 5th amendment and refusing to supply to the Court information necessary for the proper administration of a case, and information to insure that creditors receive complete and accurate data with regard to any claim they might have, and the financial history and status of the debtor, taking the 5th Amendment with regard to that is not without consequences.  Indeed, taking the 5th Amendment, while it protects you from certain prosecution, perhaps, it does not protect you from dismissal of your bankruptcy case.  It does not protect you to require the Court, the Bankruptcy Court, to enter a discharge of debt, and give you the benefits under the law of bankruptcy.  Documents are signed under oath as being accurate, truthful, and complete.  I do not have confidence that this Court has been given accurate, truthful, and complete information.  What is clear is that the Court is informed at least two social security numbers have been used by this debtor, and that the debtor refuses to answer any questions with regard to that.

obligation, or her obligation to pursue this matter," to bring it to the "proper authority's attention," and to report to the Court every 30 days thereafter about the status of the impending "investigation and evaluation of the situation."

Shortly after the hearing, the Debtor filed a Notice of Multiple Social Security Numbers, in which he disclosed that he had used the 3099 Number to incur debts and that his correct social security number was the 8844 Number.  He also wrote to the United States Trustee stating that he had purchased the 3099 Number, as described above.

The United States Trustee filed a Complaint[9] against the Debtor seeking to deny discharge pursuant to 11 U.S.C. §727(a)(3) and (a)(4)(A).  The United States Trustee alleged that the Debtor should be denied a discharge pursuant to §727(a)(3) because the Debtor's use of two different social security numbers was a form of falsifying recorded information from which his identity and financial condition could be ascertained, and pursuant to §727(a)(4)(A) because the Debtor's listing of the 3099 Number on his petition and his failure to list the name "Cazales" constituted a false oath material to his bankruptcy case.[10]  The adversary proceeding was assigned to the same judge who had conducted the earlier hearing.

The United States Trustee conducted extensive discovery, requesting and receiving information from the Debtor and contacting every scheduled creditor, both to see what

---

[9]The Complaint was amended twice.

[10]The name the Debtor disclosed on his bankruptcy petition is Jesus Armando Perez. However, it appears from the record that in keeping the Mexican tradition of using matronymics, the Debtor's full name, Jesus Armando Perez Cazales, appears on his birth certificate and driver's license.  At the request of a mortgage loan officer, the Debtor included the Cazales name on some documents, but the note and deed of trust do not reflect it. The Debtor has testified that he does not currently use the name Cazales, nor did he use it to incur any debt.

information the Debtor had provided and to learn about the creditor's practices relative to verification/replacement of duplicative social security numbers.  Based upon the Debtor's complete cooperation, and the results of the investigation which were reviewed by several attorneys in the United States Trustee's office, the United States Trustee determined that the complaint to deny discharge should not and could not be pursued.

Prior to the scheduled trial, the United States Trustee and Debtor filed a Stipulation for Dismissal of Adversary Proceeding (the "Stipulation of Dismissal") pursuant to Fed. R. Bankr. P. 7041.  The Stipulation of Dismissal reflected the parties' agreement that the §727 action be dismissed with prejudice and that no consideration had been given to or promised by the Debtor for the dismissal.  Indeed, the parties agreed to pay their own fees and costs.  Pursuant to the local rules of the bankruptcy court, they submitted a Notice of the Stipulation of Dismissal to be forwarded to the Bankruptcy Noticing Center ("BNC") and served on all creditors. Unfortunately, however, the notice was not sent by the Clerk to the BNC and no creditor received the Notice.

In the context of the adversary proceeding, the Bankruptcy Court *sua sponte* convened a second hearing, this time to address the Stipulation of Dismissal.  The parties appeared through counsel.[11]  The United States Trustee advised the Bankruptcy Court that although he was concerned about the Debtor's pre-petition use of the 3099 Number, he had concluded that the action under §727 was no longer appropriate.  The United States Trustee detailed the information that had been obtained during discovery, identified the resulting evidentiary shortcomings in proving the §727 claims, and concluded with a representation that allegations in the complaint

---

[11]In the intervening time, the Debtor obtained new counsel.

6

could not be pursued in compliance with Fed. R Bankr. 9011.[12]  The United States Trustee confirmed that the Debtor had been unable to obtain credit with the 8844 Number, that all of his creditors had extended credit based upon the 3099 Number, that his investigation had been thorough, and that the decision to dismiss was made only after review by a number of attorneys in the United States Trustee's office.  The Trustee explained that the §727(a)(3) claim was especially weak  in light of the Debtor's honesty and candor during the bankruptcy proceedings, the Debtor's concerted efforts to pay off the debts associated with the 3099 Number, and the creditors' apparent complicity in the continued use of the 3099 Number.  The §727(a)(4)(A) claim was correspondingly weak because the Debtor had used  name "Cazales" only once, apparently at the request of a loan officer, and there was no evidence of that the Debtor knowingly or fraudulently intended to make a false statement in his Petition.

---

[12]Rule 9011(b) reads as follows:
> By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,--
> (1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
> (2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
> (3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Reacting to the Court's concerns at the prior hearing, through his counsel, the Debtor stated that he had never intended to invoke rights pursuant to the 5th Amendment, had formally waived such rights, and had voluntarily supplied information about the 3099 Number and any other requested information to the United States Trustee.  Counsel confirmed that the United States Trustee had contacted every creditor listed in the schedules, subpoened documents, and gathered information as to the creditor's knowledge of the social security numbers and processes used to identify and address duplicate numbers.  Counsel also represented that he had obtained post-petition credit reports that confirmed that all of his creditors had been listed in the Schedules.  On May 31, 2007, the Bankruptcy Court took the matter under advisement.

On September 7, 2007, the Bankruptcy Court issued its written Opinion and Order (the "September 7 Order").  In it, the Bankruptcy Court made extensive factual findings, some based upon representations made to the Court, some based upon its own research, and some without any apparent source.  Briefly summarized, the Bankruptcy Court found:

1) That in using the 3099 Number, the Debtor had engaged in pre-petition identity fraud.

2) That the person to whom the 3099 Number had been properly issued[13] was unknown, had not been scheduled and, therefore, "*likely [knew] nothing about this bankruptcy case, adversary proceeding, and the impact that this identity theft will have on his future*" (emphasis in original).

3) That the United States Trustee was "taking no action with respect to the fraud upon" the credit reporting system, the Defendant's creditors, the unknown person whose

---

[13]According to the Social Security Administration, the person would have been 19 years old at the time of the ruling.

identity had been stolen, the bankruptcy process, and the Bankruptcy Court.  The United

States Trustee chose "not to pursue this matter *despite the acknowledged illegal use of a*

*Social Security number and the deleterious affect of the unlawful conduct on all parties-*

*in interest.*"  (Emphasis in original).

4) That identity theft and fraud are serious national problems.

5) That based upon the admissions of the Debtor, the United States Trustee would likely

prevail in denying the Debtor's discharge, that such litigation was "not particularly

complex," and that most questions to be determined were "legal questions."

6) That "*the creditors ha[d] not been given adequate notice of the bankruptcy case, this*

*adversary proceeding, and the Stipulation and Notice of Dismissal of this matter.  The*

*interests of creditors [were] not protected or served here by the Stipulation.*"  (Emphasis

in original).

7) That the public interest and integrity of the bankruptcy system would be ill-served if

the Court approved the Stipulation and dismissed this adversary proceeding.  "The

United States Trustee and the Defendant [Debtor] are asking this Court to condone and

contribute to the perpetuation of improper and consequential acts."

The Bankruptcy Court considered Fed. R. Bankr. P. 7041 and *Bank One v. Kallstrom* (*In*

*re Kallstrom*), 298 B.R. 753 (10th Cir. B.A.P. 2003).  The Bankruptcy Court articulated seven

factors that it considered in applying Rule 7041:[14] (1) the probable success of the underlying

litigation on the merits, (2) the possible difficulty in collection of a judgment, (3) the complexity

---

[14]Unless otherwise denominated, references to rules are to those found in the Federal
Rules of Bankruptcy Procedure.

and expense of the litigation, (4) the interests of creditors in deference to their reasonable views, (5) the putative interests of an unknown innocent person whose Social Security number had been used by the Debtor, (6) the sufficiency of notice to creditors and parties-in-interest, and (7) the integrity of the bankruptcy system. Of these, the Bankruptcy Court considered the deficiency of notice to creditors (particularly the unknown holder of the 3099 Number) and the possible effect of entry of a discharge order to be most significant.

Despite its factual findings and with full recognition of its authority under Rule 7041, Bankruptcy Court did not order that further notice be given to creditors, order that the United States Trustee engage in further investigation or pursue its complaint, or specify terms or conditions upon which it would approve dismissal of the §727 proceeding. Instead, finding that dismissal of the proceeding would "perpetuate" and "condone" the Debtor's pre-petition fraud, the Bankruptcy Court refused to approve the Stipulation of Dismissal.

With regard to entry of a Discharge Order, the Bankruptcy Court posited three scenarios, two of which it found unpalatable. The first was entry of a discharge using the 3099 Number. This, the Bankruptcy Court reasoned, would condone and perpetuate the Debtor's pre-petition fraud. The second was entry of a discharge using the 8844 number. This, the Court reasoned would be "anomalous and meaningless" and condone the Debtor's fraud. The third option was to decline to enter a discharge order pursuant to 11 U.S.C. §105(a) and 11 U.S.C. §727(a)(4)(A) to "prevent an abuse of process."[15] Without further discussion or explanation, the Bankruptcy Court adopted this alternative.

---

[15]For this proposition, the Bankruptcy Court referred to dicta in a footnote "*See, e.g. In re Burrell*, 148 B.R. 820, 823 (Bank.E.D.Va. 1992) (bankruptcy court denied a debtor his discharge *sua sponte* under 11 U.S.C. §§105(a) and 727(a)(8))."

10

## II.     Issues Presented

The Debtor contends that the Bankruptcy Court committed six errors: (1) determining that the Debtor's use of the 3099 Number was a false oath warranting denial of discharge pursuant to 11 U.S.C. §727(a)(4); (2) relying upon 11 U.S.C. §105 to deny the Debtor's discharge under 11 U.S.C. §727(a); (3) denying the Debtor due process; (4) failing to approve the Stipulation of Dismissal; (5) finding inadequate notice to creditors and inferring that the rightful owner of the 3099 Number had or would be injured; and (6) abusing its discretion in declining the Stipulation of Dismissal.

The United States Trustee has not squarely addressed any of these issues.  Initially, he did not file a responsive brief and did not appear at the hearing set for oral argument.  Due to his absence, this Court continued the hearing.  At the subsequent hearing, the United States Trustee announced through counsel that he did not oppose the appeal, but would take no position as to the appropriate outcome.

At the supplemental hearing, this Court requested supplemental briefing[16] on two issues:

(1)     What authority does the Bankruptcy Court have to reject the proposed dismissal of a §727 Complaint if the Plaintiff has received no consideration for the dismissal?

(2)     What authority does the Bankruptcy Court have in considering the request to dismiss a §727 complaint if there has not been notice to all creditors of the intended dismissal?

In the supplemental briefs, the Debtor argues that in considering a proposed dismissal of a §727 action when no consideration for the dismissal has been given, the Bankruptcy Court's

---

[16]The Court offered the United States Trustee the option of submitting his brief either in his capacity as Appellee or as an *amicus curiae*.

authority is limited to: (1) requiring notice to creditors pursuant to Rule 7041 or giving special instructions to the case Trustee or the United States Trustee to conduct an examination; (2) evaluating any objections concerning the propriety of litigating the case; (3) determining the willingness of any objector to intervene or substitute for the plaintiff and pursue the complaint; and (4) balancing such interest against any protest of undue prejudice by the Debtor.  The United States Trustee[17] does not address the authority of the Bankruptcy Court to dismiss the §727 action under these circumstance, but submits that the Bankruptcy Court cannot require the United States Trustee, as an agent of the executive branch, to prosecute a meritless claim.  Such an attempt would violate the independent, discretionary powers of the executive branch.  Regarding notice, both parties agree that a §727 complaint may be dismissed without giving notice to creditors, but the Bankruptcy Court may also require additional notice pursuant to Rule 7041.

### III.    Standard of Review

In a bankruptcy appeal, a district court defers to a bankruptcy court's  findings of fact unless they are clearly erroneous.  Fed. R. Bankr. P. 8013; *Hedged-Investments Assocs., Inc. v. Brinker(In re Hedged-Investments Assocs., Inc.)*, 380 F.3d 1292, 1297 (B.A.P. 10th Cir. 2004).  Conclusions of  law are reviewed  *de novo*. *Branding Iron Motel, Inc. v. Bank of Mid America (In re Branding Iron Motel, Inc.)*, 798 F.2d 396, 399 (B.A.P. 10th Cir. 1986).  Application of a rule of bankruptcy procedure is reviewed in accordance with the "abuse of discretion" standard.  *Bank One v. Kallstrom (In re Kallstrom)*, 298 B.R. 753, 760 (B.A.P. 10th Cir. 2003).  An abuse of discretion occurs if the lower court bases its decision on an erroneous conclusion of law, makes a

---

[17] Because the United States Trustee did not take a position as to the outcome of the appeal, it submitted an *amicus* brief.

decision that is arbitrary, capricious, whimsical, or manifestly unreasonable, makes a clear error

of judgment, or exceeds the bounds of permissible choice in the circumstances. *See Kiowa Indian*

*Tribe v. Hoove*r, 150 F3d 1163 (10th Cir 1998); *Moothart v. Bell,* 21 F3d 1499, 1504 (10th Cir

1994).

## IV.    Analysis

### A.    Applicable Statutory Law and Rules of Procedure

According to the express provisions of 11 U.S.C. §727(a), a debtor who requests relief

under Chapter 7 of the Bankruptcy Code is entitled to discharge of his or her debts unless one of

the exceptions enumerated in the statute applies.  In pertinent part, Section 727(a) states:

§727. Discharge
       (a) The court **shall** grant the debtor a discharge, unless -------

              (3) the debtor has concealed, destroyed, mutilated , falsified, or
              failed to keep or preserve any recorded information, including
              books, documents, records, and papers from which the debtor's
              financial condition or business transactions might be ascertained,
              unless such actor or failure to act was justified under all of the
              circumstances of the case; [or]

              (4) the debtor knowingly and fraudulently, in or in
              connection with the case----

                     (A) made a false oath or account.

A debtor's right to a discharge under §727 is at the heart of the "fresh start" provisions of

the Bankruptcy Code.  See *Grogan v. Garner*, 498 U.S. 279, 287 (1991).  Because of the

importance of discharge, the right to a discharge is construed liberally in favor of the debtor, and

the grounds for denial of discharge under §727 are construed narrowly.  *Gulickson v. Brown (In*

*re Brown)* 108 F.3d 1290, 1292 (10th Cir 1997).  A creditor, case trustee, or the United States

Trustee challenging the discharge must initiate an adversary proceeding in which the challenge

will be determined and, in such proceeding, has the burden of proof by a preponderance of the evidence. Fed. R. Bankr. P. 4004, 4005; See *Brown*, 108 F.3d at 1293.

Rule 4004 provides that the party challenging a discharge must initiate an adversary proceeding by filing a complaint. It also sets the time for filing of a complaint based upon the first date set for the §314 meeting. Fed. R. Bankr. P. 4004(a). If no complaint is timely filed, the an order of discharge automatically enters. Fed. R. Bankr. P. 4004(e). If a complaint is timely filed, the resulting adversary proceeding is governed by the rules in Part VII of the Federal Rules of Bankruptcy Procedure. Fed. R. Bankr. P. 4004(d). If an order of discharge is entered, either because no complaint was timely filed or because the adversary proceeding is resolved in favor of a debtor, the clerk is required to give the creditors notice of the discharge order. Fed. R. Bankr. P. 4004(g). Similarly, if a debtor's discharge is denied, the clerk must to give notice of such denial to all creditors. Fed. R. Bankr. P. 4006.

Part VII of the Federal Rules of Bankruptcy Procedure are numbered similarly and incorporate corresponding provisions of the Federal Rules of Civil Procedure. For example, dismissal of an adversary proceeding (including a §727 action) is governed by Rule 7041. It provides in pertinent part:

> Fed. R. Civ. P. 41 applies in adversary proceedings, except that a complaint objecting to the debtor's discharge shall not be dismissed at the plaintiffs instance without notice to the trustee, the United States Trustee, and such other persons as the court may direct, and only on order of the court containing terms and conditions which the court deems proper.

Ordinarily, dismissal of an adversary proceeding is akin to that in most civil actions; an agreement among all parties is sufficient. Fed. R. Civ. P. 41(a)(1)(A)(ii). However, in §727 actions, the Bankruptcy Court has considerable discretion as to what notice should be given of an

14

intended dismissal, whether the action should be dismissed, and the terms and conditions of any such dismissal.

Such discretion is granted under Rule 7041 because §727 actions potentially affect all creditors. Potential impact on creditors is particularly significant in situations where a single creditor brings a §727 action, and in order to obtain a dismissal of the action, a debtor offers the creditor consideration in the form of a payment, exception to discharge, or the like. Often referred to as a "*quid pro quo*" agreement, such a settlement has the potential of rewarding one creditor at the expense of others. *See In re Kallstrom*, 298 B.R. at 760.[18] By giving notice of the potential dismissal of the §727 action to all creditors, those who did not initiate the action but may be impacted by it can argue for particular terms and conditions or undertake prosecution of the action.

Rule 7041 does not specify the factors that a bankruptcy court may consider in dismissing a §727 action.[19] Consequently, especially with regard to "*quid pro quo*" dismissals, courts have adopted a number of approaches. Two opinions are particularly instructive. The first case is *In re Babb*, 346 B.R. 774 (Bankr. E.D. Tenn. 2006), which identifies three different approaches taken

---

[18]In *Kallstrom,* the Tenth Circuit Bankruptcy Appellate Panel considered a "*quid pro quo*" settlement of a §727 action which the bankruptcy court had declined to approve. In affirming the bankruptcy court's decision, the Bankruptcy Appellate Panel noted that the creditor had improperly used the §727 action to extract payment of a dischargeable pre- petition debt by the debtors, and that the bankruptcy court's rejection of the settlement terms did not foreclose negotiation of other terms which might have been approved. *Kallstrom* does not expressly or implicitly address situations such as this, where the §727 action is initiated by the United States Trustee and no consideration is given by a debtor for dismissal.

[19] Standards that apply may vary greatly, depending upon the circumstances for the dismissal, especially whether it is voluntary or involuntary. For example compare *In re Interbank Funding Corp.*, 310 B.R.238 ( Bankr. S.D. N.Y. 2004) with *In re McKissack*, 320 B.R. 703 (Bankr. D. Colo. 2005).

by bankruptcy courts across the country – such as prohibiting such settlements *per se*, allowing compromises that "serve the public interest," and examining whether the proposed settlement is fair and equitable and in the estate's best interest.  Of these, the *Babb* court contends that the last approach has been adopted by the majority of courts.  Within the Tenth Circuit, *Peterson-Marone Const., LLC v. McKissack (In re McKissack)*, 320 B.R. 703 (Bankr. D. Colo. 2005) provides a useful and thoughtful summary of practices.  In the Tenth Circuit, there is no *per se* prohibition of "*quid pro quo*" settlements, and no litmus test for determining whether a dismissal based upon such a settlement should be approved.   A bankruptcy court must be satisfied that the dismissal is in the best interest of the estate, which requires balancing of the creditors' interests and the estate's interest in light of the policy objectives of §727.[20]  In applying this balancing test, a bankruptcy court is limited to an objective consideration of developed facts. *Reiss v. Hagmann*, 881 F.2d 890, 892 (10th Cir. 1989).

Both *Babb* and *McKissack* recognize that the policy concerns associated with "*quid pro quo*" settlements, however, are not present in situations when there is no consideration is given for dismissal.  Indeed, the *McKissack* court observes:

> But those public policy considerations are not present where the proposed dismissal is without consideration.  Where (a) the motion

---

[20]The *McKissack* court identifies several factors that it considers in such circumstances: (1) the nature of the wrongful behavior alleged in the complaint and the support for such allegations; (2) whether consideration for the dismissal is paid into the estate or to the complaining creditor; (3) whether the amount of consideration going to the complaining creditor is greater than its expenses in prosecuting the action; (4) whether other parties have filed objections to the proposed settlement; (5) whether another qualified party in interest is willing to commit to taking over the litigation and pursuing it to judgment; (6) the degreee to which the settling parties have sought the involvement of the United States Trustee or case trustee; and (7) whether a §523 action to determine dischargeability of a debt is being settled in conjunction with the §727 action.

> to dismiss is adequately noticed out to parties in interest; (b) there
> are no objections to the motion; and (c) no consideration for
> dismissal is proposed, a court would be hard-pressed to find
> grounds to deny the motion to dismiss.  Even if an objection is filed
> alleging that the §727 action is a strong one and should be
> continued, a court simply cannot force a plaintiff to continue in the
> prosecution of the action.

*Id*. at 718.  The public policy concerns associated with "*quid pro quo*" dismissals are further reduced when dismissal is sought by the United States Trustee who, as a neutral fiduciary for the bankruptcy process, represents that a complaint lacks merit.  *See In re Maynard*, 269 B.R. 535, 542 (D.Vt. 2001).  In such circumstances, a bankruptcy court's primary focus should be upon providing creditors with notice of the proposed dismissal, to ensure that they have an opportunity to object and to undertake prosecution of the §727 action.

**B.     Discussion**

This case is unusual in a number of respects.  First, although the Debtor admittedly incurred pre-petition debts using a social security number that had not been issued to him, he did not misrepresent his true social security number or fail to disclose it as part of the bankruptcy process.  He attempted to make full disclosure to his creditors of both social security numbers he used and of the Stipulation of Dismissal, but was frustrated in his efforts.  In addition, as noted by the United States Trustee, the Debtor was forthcoming and honest in disclosing all requested and required information necessary for the bankruptcy process.  Thus, this case differs from those where debtors used false or fictitious numbers to obtain bankruptcy relief, misrepresented a social security number on a petition, or refused to disclose a true and accurate social security number.[21]

---

[21]*See, e.g.*, *In re Anderson*, 248 B.R. 726, 726 (Bankr. S.D.N.Y. 2000) (dismissing case where the Debtor refused to disclose his correct social security number); *In re Riccardo*, 248 B.R. 717, 720 (Bankr. S.D.N.Y. 2000) (dismissing case where the Debtor purposefully

Second, all of the Debtor's pre-petition debts were incurred using the unauthorized 3099 Number, the number that was disclosed in the §341 Notice.  The §341 Notice did not clearly disclose the Debtor's issued social security number or that he had used two numbers, but the 3099 Number was correctly disclosed.  Thus creditors received the initial information that was vital to their rights in the bankruptcy case.  In addition, each creditor has been individually contacted by the United States Trustee.

Third, although the Bankruptcy Court twice found that notice to creditors was inadequate, it did not order supplementation of notice to address the deficiency.  It found at the first hearing that the §341 Notice had been inadequate, it did not order supplemental notice as suggested by the Debtor.  And, though it found in the September 7 Order that there had not been adequate notice to creditors and parties in interest, the Bankruptcy Court did not specify the deficiencies in notice or order that supplemental notice be given.  The Bankruptcy Court gave no reason for its failure or refusal to direct the purported notice issues to be corrected.

Finally, it is clear from the transcripts of the pertinent hearings, as well as its September 7 Order, that the Bankruptcy Court was focused upon and troubled by the Debtors's pre-petition use of the 3099 Number.[22]  In addition, the Bankruptcy Court was frustrated by its inability to assure

---

misrepresented his social security number and did not disclose his correct number); *In re Gonzalez*, 248 B.R. 731, 732 (Bankr. S.D.N.Y. 2000) (revoking discharge and dismissing case where the Debtor knowingly misrepresented her social security number and refused to correct it).

[22]Initially, the Bankruptcy Court was also concerned about the Debtor's invocation of his 5th Amendment right not to incriminate himself.  From this Court's perspective, it is not clear that the Debtor ever effectively invoked his rights, or if he did, that it mattered.  The Debtor voluntarily admitted to obtaining the 3099 Number from someone other than the Social Security Administration and using it to obtain credit at the §341 meeting, and answered the question posed about the source of the 3099 Number at the initial hearing.  Only after the question was repeated did he assert a constitutional right not to respond.  Because the Debtor was asked only

that the rightful holder of the 3099 Number would be able to participate in the bankruptcy case as a creditor.  This was due, in part, to the refusal of the Social Security Administration to disclose the rightful holder's identity.  The Bankruptcy Court was further frustrated by the apparent unwillingness of the United States Attorney to criminally prosecute the Debtor for his pre-petition conduct, and ultimately by the decision of the United States Trustee to dismiss the §727 claims.  The Bankruptcy Court apparently believed that the Debtor was not being held accountable for his unlawful pre-petition use of the 3099 Number, and that if it approved the Stipulation of Dismissal and entered an Order of Discharge, it would effectively "condone" and "perpetuate" such conduct.

This Court shares the Bankruptcy Court's concern about the problem of identity theft and appreciates its frustration with the unique circumstances presented in this case.  However, the failure of the Bankruptcy Court to address notice deficiencies and instead to deny approval of the Stipulation of Dismissal and to deny the Debtor a discharge on grounds not articulated in §727 cannot be affirmed.  In erroneously applying the law and exceeding the bounds of its permissible choice, the Bankruptcy Court abused its discretion.

Viewed from a procedural perspective, the September 7 Order denied the Debtor and his scheduled creditors due process.  A debtor's entitlement to a discharge is governed by §727 in the context of an adversary proceeding, in which the role of the Bankruptcy Court is as a neutral

---

one question that he refused to answer, it was an inaccurate overstatement by the Bankruptcy Court at he close of the hearing to observe that he had "refused to provide information" with regard to the 3099 number.  Even if the Debtor effectively asserted his 5th amendment rights, he later expressly waived them in his statements and disclosures to the United States Trustee.

and impartial fact-finder.[23]  A bankruptcy court's findings are limited to the facts established by or upon presentation of evidence.  The outcome of a §727 discharge denial proceeding is a declaratory judgment that a discharge will granted or denied, which results in a notice sent by the clerk to creditors.  The notice informs them as to whether the scheduled debts are discharged or not.

The Sept 7 Order short-circuited this process.  In the §727 adversary proceeding in this case, there was no trial, no presentation of evidence, no opportunity to contest evidence, and no final determination on the merits.  As a consequence, there was no notice to creditors as to whether debts held by them were discharged.  The issue of whether the Debtor is entitled to a discharge under §727 remains extant, stalled by the Bankruptcy Court's failure to require that notice of the Stipulation of Dismissal be given to creditors and refusal to dismiss the adversary proceeding.  The United States Trustee is unwilling to prosecute the matter because he has concluded that it is meritless, and the Bankruptcy Court has not and arguably cannot compel him to do so.[24]  Because no notice of the Stipulation of Dismissal was sent to creditors, none has been given the opportunity to oppose dismissal or undertake prosecution of the litigation.  Thus, the September 7 Order puts both the Debtor and his creditors in legal limbo – without the ability to have a final determination made under §727 as to whether a discharge will enter.

---

[23]*See Fulton v. McVay*, 318 B.R. 546, 555 (D. Colo. 2004) (underscoring the importance of the Bankruptcy Court's role of neutrality).

[24]As is noted in *McKissack,* a court simply cannot force a plaintiff to continue in the prosecution of the §727 action.  This is particularly true when the plaintiff is the United States Trustee who operates under authority of the executive branch.  The United States Trustee correctly observes that any effort of a bankruptcy court to compel prosecution may well run afoul of the doctrine of separation of powers.

In addition, the Bankruptcy Court declined to exercise its authority under Rule 7041.  As noted earlier, Rule 7041 incorporates the provisions of Rule 41 of the Federal Rules of Civil Procedure, under which the Stipulation of Dismissal would be self-effectuating.  Fed. R. Civ. P. 41(a)(1)(A)(ii).  Although Rule 7041 authorizes a bankruptcy court to require notice to creditors or other interested parties, and to condition its approval upon appropriate terms and conditions, the Bankruptcy Court did not do either.

In the September 7 Order, the Bankruptcy Court found that notice to creditors and parties in interest was inadequate, but it did not identify what notice was inadequate, what the deficiency was, or direct that the deficiency be cured.  This is particularly troublesome because rather than curing a notice problem either in conjunction with the Stipulation of Dismissal, or with the §341 notice at the earlier hearing, the Bankruptcy Court rejected the Stipulation of Dismissal because of it.  Furthermore, rather than determining upon what terms and conditions dismissal would be appropriate, the Bankruptcy Court categorically refused to approve it.

Assuming, without determining, that Rule 7041 can be read to authorize a categorical denial of approval of dismissal and denial of discharge, the Bankruptcy Court had an inadequate factual record upon which to do so.  As noted earlier, there is no generally accepted list of factors that a bankruptcy court must consider in application of Rule 7041 – they vary according to the circumstances under which dismissal is being requested.  The Bankruptcy Court was free to fashion the factors appropriate to the situation, but such factors should have reflected the general purposes of §727 and Rule 7041.

This situation is vastly different from that of the "*quid pro quo*" settlement.  The §727 proceeding was initiated by the United States Trustee, acting as a fiduciary for the estate and for

the bankruptcy process. There was no consideration given by the debtor for dismissal. Instead, the United States Trustee sought to dismiss the action because, after extensive investigation, he found it meritless.

As a consequence, the policy considerations associated with a "*quid pro quo*" settlement were not present and, therefore, the Bankruptcy Court erred in relying upon the reasoning of *Kallstrom*, *Reiss*, and other similar cases. The situation presented here is much closer to that mentioned in *McKissack*, in which one would expect the requested dismissal to be approved after notice to creditors. Because no consideration had been given by the Debtor in exchange for dismissal, and the United States Trustee represented that its claims were meritless, the only way that the matter could proceed was if a creditor was willing to undertake it. This required notice to the creditors, which the Bankruptcy Court failed to order.

Putting aside problems with notice, it appears that the primary reason that the Stipulation of Dismissal was rejected was because the Bankruptcy Court was of the opinion that the complaint had merit and that the United States Trustee might prevail. Ordinarily, upon review, this Court would defer to such finding, but here it is unsupported by the evidence.

The two grounds for denial of discharge asserted by United States Trustee were §727(a)(3) and (a)(4)(A). Section 727(a)(3) requires proof that: (1) the Debtor concealed, destroyed, mutilated, or falsified recorded information; (2) from which his financial conditions or business transactions might be ascertained; and (3) that his act/failure to act was not justified under the circumstances of the bankruptcy case. *See, e.g., Cobra Well Testers, LLC v. Carlson (In re Carlson)*, Case No. 06-8158 WY-06-027, 2008 WL 193232, at *4 (10th Cir. B.A.P. Jan. 23, 2008); *In re Brown*, 108 F.3d at 1295. Section 727(a)(4)(A) requires proof that: (1) the

Debtor made a statement under oath; (2) that was false; (3) he knew that the statement was false when he made it; (4) he fraudulently intended to make the statement; and (5) the statement materially related to bankruptcy case. *See, e.g., Garrett v. Vaughan (In re Vaughan)*, 233 F. App'x 783, 785 (10th Cir. 2007). The parties stipulated that the Debtor fraudulently used the 3099 Number pre-petition, that his Petition did not reflect his matronymic name (Cazales) or the 8844 Number, but that he had fully disclosed all information requested by and cooperated with the United States Trustee. Construing these facts most generously to the United States Trustee, they are insufficient to satisfy the required elements of either claim. In addition, the United States Trustee stated that in the investigation it had become clear that certain allegations in the complaint could not be pursued in compliance with Fed. R. Bankr. P. 9011. Put simply, an objective assessment of the facts presented does not support the finding that the United States Trustee "may succeed" at trial.[25]

Viewed from a substantive perspective, the Debtor was denied due process because the September 7 Order denied the Debtor a discharge on grounds not stated in §727. As noted, the Bankruptcy Court did not resolve the §727(a)(3) and (a)(4)(A) challenges on their merits. Instead, it refused to enter a discharge for two reasons not recognized in §727 or any other provision of the Bankruptcy Code – because the Debtor had engaged in pre-petition identity theft and because the victim of the identity theft had not been able to participate as a creditor in the bankruptcy case.

---

[25] Nor was there a basis for finding the §727 action would involve primarily questions of law. Both claims contain an intent element. Questions as to a debtor's intent are peculiarly factual. See *In re Farmers Co-op Ass'n of Talmage, KS v. Strunk*, 671 F.2d 391 (10th Cir. 1982).

There are, undoubtedly, good policy reasons for penalizing those who engage in identity theft, and a penalty in the bankruptcy process may be warranted and appropriate. But the authority to impose a penalty upon debtors who engaged in pre-petition identity theft is left strictly to Congress.[26] No matter how laudable its purpose, a bankruptcy court is not free to deny a discharge on grounds not found within §727.

There is no saving grace to be found in the September 7 Order's casual reference to 11 U.S.C. §105(a), nor in the articulated necessity of denying the Debtor's discharge in order to "prevent an abuse of process." Although §105(a) authorizes a Bankruptcy Court to issue "any order, process, or judgment that is necessary or appropriate to carry out the provisions" of the Bankruptcy Code, such authorization is limited to carrying out the express provisions of the Bankruptcy Code, not creating new ones. *Norwest Bank Worthington v. Ahlers*, 485 U.S. 197, 206 (1988); *U.S. v. Sutton*, 786 F2d 1305, 1308 (5th Cir 1986).

Nor can denial of discharge on grounds other than those in §727 be justified as preventing "an abuse of process." In this context, the September 7 Order refers to *In re Burrell*, 148 B.R. 820 (Bankr. E. D. Va. 1992). In *Burrell,* a bankruptcy court denied a discharge because the debtor had previously received a discharge in a chapter 7 case within the prior six years. Although *Burrell* is similar to the result in this case, the bankruptcy court raised the issue of discharge *sua sponte*, it is dissimilar in that the bankruptcy court applied the express provision

---

[26] The Court notes that Congress arguably has provided some relief from these problems in  11 U.S.C §523, which identifies specific types of debt that are excepted from discharge. These include debts arising from willful and malicious injury by a debtor in §523(a)(6) and unscheduled debts in §523(a)(3).

§727(a)(8),[27] rather than creating a new ground for denying a discharge.

## V.    Conclusion

For the foregoing reasons, the September 7 Order is **REVERSED**.  This Court would direct that an Order of Discharge immediately enter, but for the Bankruptcy Court's finding that creditors have not received adequate notice.  Because all of the Debtor's creditors extended credit based upon the 3099 Number, the §341 Notice clearly disclosed such number, and all creditors were contacted by the United States Trustee, this Court sets aside the Bankruptcy Court's determination that the §341 Notice was inadequate.  This notice need not be supplemented.

However, it is undisputed that creditors were given no notice of  the Stipulation of Dismissal.  This matter is **REMANDED** for the purpose giving such notice.  If no objection or request to undertake the §727 proceeding is interposed by a creditor, then the §727 proceeding shall be dismissed and an Order of Discharge entered.  Such Order will reflect both the 3099 Number and the 8844 Number.  Reference to the 3099 Number addresses the debts that are scheduled, and potentially will assist the unknown victim in asserting his rights.  Reference to the 8844 Number will ensure that future creditors of the Debtor are aware that he has previously obtained bankruptcy relief.  If an objection or request to undertake the §727 proceeding is made by a creditor, then the Bankruptcy Court shall resolve such issue in a manner consistent with the observations set forth herein.

DATED this 20th day of May, 2009.

**BY THE COURT:**

---

[27]This section prohibits the granting of a discharge if one has been granted within the prior 6 years.

25

Marcia S. Krieger
United States District Judge